**UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF FLORIDA**

-----------------------------------------------------------------------x

GENERATION Z EDUCATION HOLDINGS, INC.,    :

                                             : **Case No.:**

              Plaintiff/Counterclaim Defendant,   : **8:14-cv-00203-VMC-MAP**

                                             :

    vs.                                           :

                                          : **Dispositive Motion**

LANGUAMETRICS, INC.                         : **Oral Argument Requested**

F/K/A LANGUAMETRICS, LLC,            :

                                          :

              Defendant/Counterclaim Plaintiff.   :

-----------------------------------------------------------------------x

### PLAINTIFF/COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS AND INCORPORATED MEMORANDUM OF LAW

      Pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 3.01, Plaintiff/Counterclaim

Defendant Generation Z Education Holdings, Inc. ("Generation Z") respectfully requests that

this Court dismiss with prejudice the two counterclaims asserted by Defendant/Counterclaim

Plaintiff Languametrics, Inc. ("Languametrics").

      As more fully set forth in the incorporated memorandum of law, the grounds for this

motion are as follows:

      1.      According to the plain language of the Exclusivity Agreement between the

            parties, Generation Z owed no contractual duty to Languametrics other than

            the duty to pay Languametrics $100,000.  In return Languametrics committed

            to provide its technology and services to Generation Z on an exclusive basis.

            It is undisputed that Generation Z paid Languametrics the $100,000.

            Languametrics' assertion that Generation Z had other contractual obligations

which it breached fails under the plain and indisputable language of the contract.

2.    Even were it true (as it is not) that Generation Z is barred for some reason from exercising the exclusive rights conferred under the Exclusivity Agreement, that would have no bearing on the enforceability of Languametrics' obligations under the Exclusivity Agreement.  Generation Z paid to have the exclusive rights; it has no contractual obligation to use them. Languametrics, having obtained the $100,000 payment it was promised under the agreement, cannot provide the rights to a third party in flagrant violation of the contract based on the excuse that Generation Z cannot or is not using the rights.

3.    In any event, Languametrics' assertion that Generation Z is barred from exercising the rights is unsupported and contradicted by Languametrics' own position in opposing Generation Z's motion for a preliminary injunction.

**GENERATION Z'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS**

**PRELIMINARY STATEMENT**

Languametrics asserts two counterclaims against Generation Z:  (1) that Generation Z breached obligations under the Exclusivity Agreement between the parties, and (2) that the Exclusivity Agreement should be declared "nugatory and unenforceable" because Languametrics contends that Generation Z cannot engage in the business contemplated by the Exclusivity Agreement.  Both counterclaims fail as a matter of law under a plain and indisputable reading of the Exclusivity Agreement.

Generation Z had only one obligation under the Exclusivity Agreement: to pay $100,000. Languametrics admits in its Answer to the Complaint that Generation Z paid the $100,000. Languametrics' first counterclaim – asserting that Generation Z breached other obligations under the contract – fails because no other obligations exist under the contract, and Languametrics identifies none. Languametrics does not – and cannot – cite to any provision in the Exclusivity Agreement to support its counterclaims. Languametrics' second counterclaim – asserting that the contract should be declared "nugatory" because Generation Z supposedly was barred from engaging in business contemplated by the contract – fails for a similar reason. Generation Z paid to have the exclusive rights in China to Languametrics' technology and services; even were Languametrics correct that Generation Z cannot now exercise those rights, the contract never required Generation Z to use the rights nor allowed Languametrics to evade the contract if Generation Z did not use the rights. Thus, whether or not Generation Z could use or chose to use the exclusive rights conferred under the agreement is irrelevant. Languametrics, having obtained the $100,000 payment it was promised under the agreement, cannot provide the rights to a third party in flagrant violation of the contract based on the excuse that Generation Z cannot or is not using the rights. In addition, Languametrics is wrong in asserting that Generation Z is barred from using the rights, for the reasons explained below.

## LEGAL ARGUMENT

Although facts alleged in counterclaims are taken as true for purposes of a motion to dismiss under Rule 12(b)(6), mere "conclusory statements" are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts in this District routinely grant motions to dismiss

where, as here, allegations in a pleading are contradicted by the plain language of a contract referenced in the pleading. *See, e.g.*, *Akzo Nobel Coatings, Inc. v. Auto Paint & Supply of Lakeland, Inc.*, No. 8:09-CV-2453-T-30TBM, 2010 WL 2821950 at *3 (M.D. Fla. July 16, 2010); *Hines v. FiServ, Inc.*, No. 8:08-cv-2569-T-30AEP, 2010 WL 1249838 at *5-6 (M.D. Fla. Mar. 25, 2010); *DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. McCranie*, No. 3:10-CV-222-J-MCR, 2010 WL 4739521 at *5 (M.D. Fla. Nov. 16, 2010).

In ruling on a Rule 12(b)(6) motion, the Court should consider the Exclusivity Agreement between the parties, which is attached as an exhibit to Generation Z's Complaint, is incorporated in Languametrics' counterclaims, and therefore is effectively part of Languametrics' pleading for Rule 12(b)(6) purposes. *See School Bd. of Manatee County, Fla. v. L.H. ex rel. D.H.*, 666 F.Supp.2d 1285, 1288 (M.D. Fla. 2009). Similarly, the excerpts of the Bain sale agreement that are attached as Exhibit 1 to this motion may be considered under Rule 12(b)(6) because they are central to Languametrics' second counterclaim and their authenticity and contents are not challenged. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

I. **THE BREACH OF CONTRACT COUNTERCLAIM SHOULD BE DISMISSED BECAUSE LANGUAMETRICS CANNOT ADEQUATELY ALLEGE THAT GENERATION Z HAD ANY CONTRACTUAL OBLIGATIONS WHICH IT FAILED TO PERFORM OR ANY DAMAGES.**

In order to prevail on its breach of contract counterclaim under Delaware law, which governs the Exclusivity Agreement pursuant to Section 6.4, Languametrics must demonstrate: "(1) the existence of a contract; (2) that [Counterclaim Defendant] breached an obligation imposed by the contract; and (3) that [Counterclaim Plaintiff] incurred damages as

4

a result of the breach." *Preferred Inv. Servs., Inc. v. T&H Bail Bonds, Inc.*, C.A. No. 5886VCP, 2013 WL 3934992, at *10 (Del. Ch. July 24, 2013).  Based on the indisputable language of the contract, Languametrics cannot satisfy the latter two elements.

Here, Languametrics asserts that "[u]nder terms of the agreement, either Generation Z was going to develop [the English-teaching market in China], or Generation Z was going to assign the LanguaMetrics rights to a third party."  Counterclaims – Count One, at ¶ 1. However, Languametrics does not refer to any provision in the Exclusivity Agreement that purportedly contains these obligations.  Nor could it.  A simple review of the contract demonstrates conclusively that no such provision exists.

Under the Exclusivity Agreement, Generation Z agreed to pay Languametrics $100,000 in return for the exclusive right to use Languametrics' technology and services in China.  Compl. Ex. A.  The contract does not ***obligate*** Generation Z actually to use the technology or services; it only confers upon Generation Z the exclusive ***right*** to do so.  *Id.* Indeed, under the contract, Generation Z had one, and only one, obligation:  The obligation to pay $100,000 to Languametrics.  *Id.*, at § 2.  Languametrics admits in its Answer to the Complaint that Generation Z paid the $100,000.  Answer ¶ 22.

More specifically, the contract contains no provision obligating Generation Z to develop language assessment tools in China.  Nor does the contract contain any provision obligating Generation Z to assign its rights.  The assignment clause sets out various conditions under which an assignment of the Exclusivity Agreement is ***permitted***, but does not ***require*** either party to assign its rights.  Compl. Ex. A § 6.1.

5

Because the contract simply does not contain the obligations Languametrics contends were breached, the counterclaim for breach of contract should be dismissed. *See, e.g., Akzo Nobel Coatings, Inc. v. Auto Paint & Supply of Lakeland, Inc.*, No. 8:09-CV-2453-T-30TBM, 2010 WL 2821950 at *3 (M.D. Fla. July 16, 2010) (dismissing counterclaim for breach of contract because the counterclaim "fail[ed] to allege a specific contractual obligation that was breached"); *Hines v. FiServ, Inc.*, No. 8:08-cv-2569-T-30AEP, 2010 WL 1249838 at *5-6 (M.D. Fla. Mar. 25, 2010) (dismissing breach of contract claim because "these contractual duties do not appear in the [contract]" and "at least one of these alleged duties is specifically contradicted by the terms of the [contract]"); *DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. McCranie*, No. 3:10-cv-222-J-MCR, 2010 WL 4739521 at *5 (M.D. Fla. Nov. 16, 2010) (finding that documents attached to the complaint "appear to contradict" plaintiff's allegations that defendant had contractual obligations to plaintiff).

Languametrics also does not – and cannot – articulate any viable theory of damages. Languametrics' only right and expectation under the contract was the right to receive $100,000 in return for conferring exclusive rights, and it is undisputed that Languametrics received the $100,000. The breach of contract counterclaim should be dismissed for this reason as well. *See Urquhart v. Manatee Mem'l Hosp.*, No. 8:06-cv-1418-T-17-EAJ, 2007 WL 781738 at *4 (M.D. Fla. Mar. 13, 2007) (granting motion to dismiss breach of contract claim because plaintiff failed to allege any damages).

II.     **THE BAIN SALE AGREEMENT DOES NOT RENDER THE EXCLUSIVITY AGREEMENT "NUGATORY OR UNENFORCEABLE."**

Languametrics contends that the Exclusivity Agreement was rendered "nugatory and unenforceable" when parties related to Generation Z entered into a transaction with Bain Capital because the Bain sale agreement contains non-compete terms which, according to Languametrics, "bar Generation Z and affiliates from participating in the relevant Chinese market for English-teaching educational testing products."  Counterclaims – Count Two, at ¶ 2.  The counterclaim fails as a matter of law for two reasons described below.

*First,* even if the non-compete provision in the Bain sale agreement barred Generation Z from engaging in the business contemplated by the Exclusivity Agreement (which it does not), that would have no bearing on the enforceability of Languametrics' obligations under the Exclusivity Agreement.  Whether or not Generation Z could use or chose to use the exclusive rights conferred under the agreement is irrelevant.  Generation Z paid to have the exclusive rights; it has no contractual obligation to use them. Languametrics' rights would be the same whether Generation Z fails to use the exclusive rights conferred under the contract or uses them and makes huge profits from doing so – either way, Languametrics' only right under the contract is to receive the $100,000 which it indisputably received.

Languametrics, having obtained the sole benefit to which it is entitled under the contract – the $100,000 payment – cannot provide the rights to a third party in flagrant violation of the contract based on the excuse that Generation Z cannot or is not using the rights.  For the same reason, Languametrics' allegation that "Generation Z, as a United States domestic corporation, is barred by Chinese law from participating in this relevant Chinese

market," *see* Counterclaims – Count Two, at ¶ 3, is irrelevant even if it were true (which it is not).  Again, whether or not Generation Z can or does use the rights conferred under the contract has no bearing on the fact that Languametrics conferred such rights exclusively to Generation Z for valid consideration which Languametrics indisputably received.

***Second***, Languametrics is wrong that the non-compete provision of the Bain sale agreement bars Generation Z from participating in the Chinese market for English-teaching educational products.  Under Section 6.8 of the Bain sale agreement (excerpts attached hereto as Exhibit 1), the sellers of the RISE entities are precluded from engaging in activities that compete in China with the business that was sold.  Ex. 1 § 6.8.  However, as Languametrics itself notes, the non-compete provision contains a carve-out for the operation of Mairui Ke Assessment of Educational Technology Co., Ltd. ("Metrics China").  *Id.*; *see also* Languametrics' Response to Motion for Preliminary Injunction, at p.4.  This carve-out was granted "based upon the representation by Paul [Wang]" that Metrics China's business operations "have not been, and are not, similar to or in direct or indirect competition" with the business that was sold.  Ex. 1 § 6.8 & Annex 4 Part A-2 ¶ 2(n).

Languametrics contends that on the basis of this carve-out – which itself is based on Paul Wang's assurance that Metrics China does not compete with the business that was sold – "Metrics China is free to use LanguaMetrics' services in China."  Response to Motion for Preliminary Injunction p. 4.  In other words, Languametrics' own interpretation is that use of Languametrics' technology and services in China is ***not*** an activity covered by the non-compete provision in the Bain sale agreement.  If the Bain non-compete agreement does not

apply to Metrics China's use of Languametrics' technology and services, then it also does not apply to Generation Z's use of the same.

Therefore, even if Generation Z were an "affiliate" covered by the Bain sale agreement (which it is not), Generation Z would not be precluded by the non-compete provision in the Bain sale agreement from exercising its rights under the Exclusivity Agreement. [1]  Also, even if Generation Z could not itself exercise the rights in China pursuant to Chinese law, as Languametrics contends, *see* Counterclaims – Count Two, at ¶ 3, but which Generation Z does not concede, the non-compete provision in the Bain sale agreement would not prevent Generation Z from either (a) assigning its rights to another entity which could exercise the rights consistent with Chinese law or (b) producing products outside China (exactly as Languametrics itself is doing now).

---

[1]     It should be noted that neither Languametrics nor Generation Z is a party to the Bain sale agreement.

## CONCLUSION

For the foregoing reasons, Plaintiff/Counterclaim Defendant Generation Z respectfully requests that the Court enter an order dismissing all counterclaims asserted by Languametrics with prejudice.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 3.01(j), Generation Z hereby requests the opportunity for oral argument on the Motion to Dismiss Counterclaims.  Generation Z submits that oral argument of 20 minutes per side would suffice and would assist the Court in ruling on this Motion.


Dated:  February 26, 2014

Respectfully submitted,

**DEBEVOISE & PLIMPTON LLP**

By: /s/ Jyotin Hamid
JYOTIN HAMID (*Pro Hac Vice*)
TRICIA B. SHERNO (*Pro Hac Vice*)
jhamid@debevoise.com
tbsherno@debevoise.com
919 Third Avenue
New York, New York 10022
Telephone:  (212) 909-1031
Facsimile:  (212) 909-6836

**AKERMAN LLP**

ARLENE K. KLINE
Florida Bar No. 104957
arlene.kline@akerman.com
222 Lakeview Avenue, Fourth Floor
West Palm Beach, FL  33401-6183
Telephone:  (561) 653-5000
Facsimile:  (561) 659-6313

*Counsel to Plaintiff/Counterclaim Defendant
Generation Z Education Holdings, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 26, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system and that a true and correct copy of the foregoing has been furnished by CM/ECF to all counsel of record.

By: /s/ Jyotin Hamid_____
JYOTIN HAMID
Admitted *Pro Hac Vice*
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY  10022
(212) 909-1031
(212) 909-6836
jhamid@debevoise.com

# EXHIBIT 1

**EXECUTION VERSION**

---

**FRAMEWORK AGREEMENT**

**BY AND AMONG**

**BAIN CAPITAL RISE EDUCATION CAYMAN LIMITED**

**AND**

**SELLERS IDENTIFIED ON ANNEX 1 HERETO**

**Dated as of August 10, 2013**

---

# REDACTED

 6.8.    **Noncompetition and Nonsolicitation**.  For a period of three (3) years from and
after the Initial Transfer Date, each Seller shall not, and shall not permit, cause or encourage any
of their Affiliates to, engage directly or indirectly in Greater China , as an owner, employee,
consultant or otherwise, in all or any portion of the Business (or any business that is directly or
indirectly competitive with the Business) as it is conducted on the date hereof in the PRC;
<u>provided</u>, that (i) no owner of less than 2% of the outstanding stock of any publicly-traded

corporation will be deemed to be so engaged solely by reason thereof in the Business, and (ii) based upon the representation by Paul in paragraph 2(n) of Part A-2 of Annex 4, for the avoidance of doubt, Paul's ownership in, and the operation of, 北京迈瑞科教育科技有限公司 ("**Matrics**") as it is operated as of the date of this Agreement by Paul within the current business scope of Matrics, which is stated in Matrics' business license as "technology development, technology transfer, technology enhancement, technology consultancy, technology import and export, education consultancy (exclusive of agency), basic software development, and product design (技术开发、技术转让、技术推广、技术咨询；技术进出口；教育咨询（不含中介）；基础软件开发；产品设计)" (the "**Business Scope of Matrics**"), are not deemed to be a violation of Paul's noncompetition obligations set forth in this Section 6.8.  For a period of two (2) years from and after the Initial Transfer Date, each Seller shall not, and shall not permit, cause or encourage any of its Affiliates to, recruit, offer employment, employ, engage as a consultant, lure or entice away, or in any other manner persuade or attempt to persuade, any Person who is a Key Employee or an employee of the New WFOE, any of the DoCo Group Companies or any of their Affiliates to leave the employment of the New WFOE, any of the DoCo Group Companies or any of their Affiliates.  If the final judgment of a court of competent jurisdiction declares that any term or provision of this Section 6.8 is invalid or unenforceable, the Parties agree that the court making the determination of invalidity or unenforceability will have the power to reduce the scope, duration, or area of the term or provision, to delete specific words or phrases, or to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Agreement will be enforceable as so modified after the expiration of the time within which the judgment may be appealed.

REDACTED

36398483_34

**PART A-2**

**SELLER SEPARATE WARRANTIES**

# REDACTED

# REDACTED

**2.** **Paul and Paul's SPVs**

Each of Paul and Paul's SPVs (but not any other Sellers) represents and warrants to the Buyer on a joint and several basis that:

# REDACTED

REDACTED

(n)     <u>Competitive Activities</u>.  None of Paul, any of Paul's SPVs or any of their respective affiliates carries on or holds any Securities in any entity that carries on, any business that is similar to or directly or indirectly competes with the Business of the Group as presently conducted.  Matrics, which Paul owns an interest in, is currently operating and conducting business in accordance with the Business Scope of Matrics and its business operations have not been, and are not, similar to or in direct or indirect competition with the Business of the Group as presently conducted.

REDACTED