UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GENERATION Z EDUCATION
HOLDINGS, INC.,

    Plaintiff,

v.                                        Case No. 8:14-cv-00203-T-33MAP

LANGUAMETRICS, INC. f/k/a
LANGUAMETRICS, LLC,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This case involves an alleged breach of contract dealing with the exclusive rights to promote certain software technology in China. Plaintiff, the purported owner of these rights, claims the Defendant, the technology's developer, violated this agreement by dealing with others. And Plaintiff contends it will be irreparably harmed unless the Court preliminarily enjoins the Defendant from selling the technology to these third parties (doc. 2). The Defendant opposes the motion, asserts the equitable defense of acquiescence, and counterclaims for breach of contract (docs. 22, 24). The district judge referred the motion to me for a hearing and a report and recommendation. After consideration, I recommend the motion be denied for the reasons the Defendant essentially gives: Plaintiff has failed to show a likelihood of success on the merits and failed to demonstrate that it will be irreparably harmed if relief is not granted.

*A. Standard of Review*

The decision to grant or deny a preliminary injunction is within the discretion of the

district court. *Carillon Importers, Ltd. v. Frank Pesce Int'l Group Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997). In determining whether a preliminary injunction should issue, the district court considers whether the moving party has demonstrated (1) a substantial likelihood of success on the merits; (2) irreparable harm to the moving party unless the injunction issues; (3) the threatened injury to the movant outweighs the potential harm the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not disserve or be adverse to the public interest. *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1240 (11th Cir. 2005). Since a preliminary injunction is an extraordinary and drastic remedy, a district court should not issue a preliminary injunction unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1210 (11th Cir. 2003).

*B. Discussion*

The Plaintiff portrays this case as a simple breach of an exclusive licensing agreement about a product the Defendant developed, a language assessment tool targeted for non-native English learners in China (the "Covered Technology"). But the pertinent facts present a different picture. Their complicated trail stretches across three continents and involves actors who are closely associated with contracting parties but who are not parties to this litigation. In short, the story is not straightforward, and that is reason enough to deny the motion.

Plaintiff (whose principal and president is Gregory Dumont) and Defendant (whose headquarters is in this division) entered into a contract (the "Exclusivity Agreement") on November 2, 2012, whereby Defendant covenanted, among other things, to not allow a third

party to use the Covered Technology in the Chinese market for a limited period of time. But what the parties actually intended by their agreement and how they intended to effectuate its provisions are less than clear. What does seem obvious from the emails and affidavits though is that both Plaintiff and Defendant knew that the marketing of the Covered Technology in China required adding another participant to the effort so as to meet Chinese legal demands – a Chinese entity. And that requirement is at the nub of the dispute here.

Plaintiff says the Defendant breached the agreement by allowing Metrics China (the Chinese company) to use the Covered Technology. Metrics is owned by Paul Wang Lanzhu ("Wang"), a Chinese national, and Justin Cahill ("Cahill"). Both Wang and Cahill are directors in an affiliate to Plaintiff called RISE China.[1] DuMont works for RISE China's controlling shareholder, Barry O'Callaghan, who is an Irish citizen. Making matters more convoluted, O'Callaghan and Dumont are business associates and shareholders in the Plaintiff. Indeed, Wang says that O'Callaghan and Dumont introduced the Defendant's owner (Ken Spiegel) to him in July 2012 (a few months before the Exclusivity Agreement was signed) to explore the use of Defendant's product in China through RISE China. Defendant steadfastly maintains that DuMont knew that Spiegel, Wang, and Cahill were working on the pilot projects that Plaintiff now contends violated the Exclusivity Agreement.

All this comports with the basic assumption underlying the Exclusivity Agreement: both sides knew that only a Chinese entity could operate in China's education market. This

---

[1] RISE China is an affiliate of Rise Global Educational Management, Ltd. ("RISE Global"). Plaintiff is an affiliate of RISE Global. DuMont serves as a representative of RISE Global. Whether Dumont has any relationship to RISE China is unclear from the record before me.

3

core demand, according Defendant, meant that parties understood they would have to form a new Chinese company to do business in China, and that Plaintiff simply served as corporate vehicle to funnel seed money to the Defendant for the ultimate endeavor. Once the Plaintiff was repaid, it would then assign all of its rights under the Exclusivity Agreement to the newly created company and cease to be involved in the Chinese effort. The Defendant persuasively points to Dumont's emails to support this position.

As if these intertwined business dealings were not complicated enough, Wang and O'Callaghan sold RISE China to Bain Capital in late 2013. Bain's agreement, the Defendant says, effectively prohibits the Plaintiff from operating in China because the agreement bars all of O'Callaghan's affiliates including the pre-RISE entities from operating competing businesses in the Chinese educational market. In other words, the Plaintiff cannot possibly demonstrate irreparable harm as it cannot market the Covered Technology in China.

The Defendant gives a variety of reasons to support denying the motion, and all are equally convincing, particularly when the relief sought is considered an extraordinary and drastic remedy committed to the Court's discretion. *Carillon Importers,* 112 F.3d at 1126. The Plaintiff's version of the facts are in dispute, making the Plaintiff's likelihood of success debatable. And the Defendant's version supports its affirmative defense of acquiescence – that Dumont's emails show he knew about Spiegel and Wang's China dealings and acquiesced.[2] But even assuming the Defendant breached the agreement, the Plaintiff fails

---

[2] Delaware law, which is the choice of law the parties picked in their agreement, recognizes that the equitable defense of "[a]cquiescence arises where a complainant has full knowledge of his rights and the material facts and (1) remains inactive for a considerable period of time; (2) freely does what amounts to a recognition of the complained of act: or (3)

to make the required showing of irreparable injury. Dumont in an October 2013 email conceded that a legal remedy (the payment of $105,000) sufficed (this also lends credence to the Defendant's account that Plaintiff served only as corporate entity to feed money to the ultimate project).

*C. Conclusion*

For these reasons and those stated by the Defendant in his response (doc. 22), I RECOMMEND the Court deny the Plaintiff's motion for preliminary injunction (doc. 2).

IT IS SO REPORTED in Tampa, Florida on March 6, 2014.



MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal. 28 U.S.C. § 636(b)(1).

---

acts in a manner inconsistent with subsequent repudiation, which leads the other party to believe the act has been approved." *Mizel v. Xenonics, Inc*., 2007 WL 4662113, *8 (Del. Super. Ct. Oct. 25, 2007).